All right, Ms. McKee, would you announce our fourth case for argument? Case number 24-3356 from the District of Minnesota, Cincinnati Insurance Company v. Rymer Companies, et al. Good morning, Your Honors. Alexander Jaden for the Rymer Companies and the Cannon Falls Mall, who are the appellants in this case. Your Honors, this is the second time this case has been before this Court. Approximately four years ago, we are here arguing over the insurance coverage and what the policy meant, what the policy coverages were, as it relates to an insurance claim from a tornado loss in Cannon Falls in 2018. At that time, before the Court, it was simply a matter of what the policy language meant and whether the policy language provided coverage for a specific set of facts from a loss. It was for the ordinance on law coverage, which was an additional coverage under the policy. At that time, the Court determined that, based on the facts of the case, based on the appraisal award that was issued in the case, that the policy did indeed provide coverage under the ordinance on law portion of the policy and remanded it to the District Court. At that time, the District Court kind of changed the factors of the case. I'll go through some high level of that, but what brings us back here today is after the first time we were in front of this Court, when we got remanded to the District Court, the District Court allowed the appraisal award to be reopened, reanalyzed, and fundamentally changed multiple times. Let me ask you this, because I was on that original panel, and I thought all we decided was the but-for causation question, whether it required but-for cause or something greater than but-for cause. And there are a bunch of things in there that talked about this is the limit of what the opinion said. That's how I read the opinion. Am I wrong about that? I think you went a step further than just describing. One of the issues was whether or not as an additional coverage it required but-for causation. And the Court determined on one hand that it didn't because it was an additional coverage, not primary coverage. But additionally, the Court found that based on the set of facts, it was a but-for coverage. So you kind of got there in two different ways. The remand was sent back to the District Court, including sort of the question of, the Court is to look at whether the requested repairs were a roof or a cover under the building code, and whether the application of the building code, which is 1511.3.1.1, that is the building code that the building official relied on and denied my client's building permit to do the partial repairs that were found on the appraisal award. So the Court sent it back to analyze it under the auspice of that building code official and what that code does. But whether it satisfies the law or ordinance requirement or whatever of the policy is slightly different, I think, than whether or not factually this is a roof or cover. And the way I read-or whether the award was a roof or cover. And the way I read the District Court's opinion is he thought those were-they're intertwined to some extent, but they're two different questions. Well, they have to be intertwined because you don't get to whether or not it is a roof or cover unless there's something contemplated on the roof. And the building official's application of whether or not it's a roof or cover requires a triggering event. In this case, it was the proposed repairs in the appraisal award. So surely they could be described separately, but within the context of this case, they're directly intertwined. They are the issue that was left when we went back. The issue that this Court sent back was not whether or not the appraisal award was vague or ambiguous or was subject to any other interpretations. The Court sent it back down for the intertwining of the building official, not what the actual award was. That difference is extremely important because when we went back to the District Court, we went from having a plain and unambiguous award that plainly says mall roof repair. It had dollar figures attached to it that the only math that could have included was repairs to the field of the roof. The field of the roof is what triggers the mall roof recover, right? No dispute. There's no ambiguity in the three words mall roof repair. So your view is that the only thing the District Court should have done, I think, was award $2.3 million straight away even though the appraiser or whatever it was, 1.7, I can't remember the exact amount, but not the $23,000 that the appraisers initially awarded. You are correct. What should have happened was to the extent that there was any factual dispute as to whether or not what the building official did as it relates to what this award contemplated was appropriate, that would have been the fact. Now, in all honesty, it's academic. It always would have. There wasn't any wiggle room for that. When the mall roof is contemplated in repair, this building code was triggered. So while the Court, I think, had to send it back under that premise because the procedural posture that was brought before this Court was cross-summary judgment motions. So it would have been hard, I believe, for this Court to just simply rule in one party's favor based on that procedural posture. So it had to send it down for some set of facts. But the only fact of any material based on what this Court's opinion was, based on what that appraisal award says, is what the value of this roof replacement is. Instead of doing that, though, what happened was the Court allowed ambiguity to be introduced into this award. So instead of doing the discovery on the issues of the Goodhue building official or if there was any experts that opined that this wasn't a roof repair for some reason, that's not what happened. What we got were affidavits drafted, two identical affidavits, drafted by Cincinnati's attorneys and signed by two of the panel members. They are an impossibility because what was in those awards doesn't track the math of what happened on the appraisal award. There's no way that math could add up. But you didn't ask to vacate, right? No, no, Your Honor. There's no reason, even to this day and age, that came up with the District Court on multiple times. And the reason for it is there's nothing to vacate. Vacation is saying that there's something wrong with the award itself. There's nothing wrong with this award. But you could have vacated the clarified award. I don't know that there's actually a procedure to vacate a clarification. And if we follow sort of the totality of what happened after, we've got an appraisal award that doesn't need to be vacated. The problem I have is that, I think, would have allowed you to get the depositions in and at least argued that there was some sort of a mistake. At this point, I don't think Minnesota law allows us to consider those depositions. And so we're left with the clarified award, which seems to be pretty clear against you. Well, I disagree that the proper mechanism would have been to vacate this. Because, again, vacation goes to the award itself. And that is there was something, either a mistake of fact, there was some fraud in the award itself. There wasn't, right? The award is clear. The award is unambiguous. The clarification only is required if there's ambiguity in there or if there's some dispute. There's not. Now, if we want to go- Your only argument that there's not is that the $23,000 exceeds what normally would be charged for the non-roof items, so to speak. That and the plain language that the award says mall roof repair, it doesn't say mall flashing repair. Those words matter. And these people, these experts that spend hundreds of appraisals a year, they know the difference between the word roof and the word flashing, and they chose to use the words mall roof repair. The math checks out perfectly. Whether the court determines they could consider the depositions, we know what the answer is. The depositions tell us what the answer is. This award was never vague. This award always meant for the roof repair. Those depositions tell us that. But if the court determines there's not a procedure to get there, I have a path that the court can. Very quickly, before you move on, flashing goes on the roof, right? I mean, we're not talking about something that goes in the, you know, goes underground or something. They're on the roof. So repairing the flashing would be part of a roof repair, wouldn't it? It's part of, it's a component. In this case, you have a flat roof, and you have a parapet wall that sticks up above it. The flashing is on the parapet wall. So the flashing is what would be sticking up. The mall roof repair is where my left arm is here. It's the flat portion of the roof. So if you were to issue an award, and, again, this claim is presented on a line-item basis to this panel. If your intention was to say, heck, it's just this flashing, say it's the flashing. You don't need to say this, and the math doesn't need to add up exactly to what it is, again, confirmed by the depositions. But if the court has a problem on the procedure. But not confirmed by the affidavits. Well, and let's talk about the affidavits, because I think what the district court should have done is should have never entertained those affidavits. If we're going to talk about one of the rare areas of law that I think we can kind of hold on to on this case, because, honestly, there's not a lot of law on what happens after appraisal award in Minnesota. That's just the reality of this. In both the Grudem brothers and the Creekwood case, the idea of what a panel can do, or what a court can do in a clarification, is it limits it that they can't add or vary terms within it. And I think the court can look at those affidavits, and they can take the context they were made in, how they were made, the fact that they were identical, the fact that they were ultimately contradicted or recanted later, and look at it and go, those, the terms, the positions taken in those affidavits, invariably add or vary the terms of the award. And if that's the case, we can stop there. We don't entertain those affidavits at all, and we revert back to where we should have been the whole time. And that's, we have an unambiguous award that clearly says mall roof repair. We've got a building code that requires you to replace the whole roof in this set of facts if there's repairs on the roof, and the roof was previously what? There's no dispute that it was previously what? In fact, Cincinnati was the party arguing it was what the whole case. So under these set of facts, either, I think we look at the totality of it, and we look at a clear answer of, well, we know what happens. We know what the answer was. We have it. What are the umpire's mouth on the depositions, right? We know what happened. But procedurally, we have a problem getting there. It's easy to go back to when we first remanded this to the district court. That's, we have an unambiguous award. If there's something in that award that is ambiguous, that should be vacated. Reimer's position is that award should be confirmed as it is. It says a roof repair. It contemplates a roof repair, and it triggers the building code. That's the end-all, be-all of the case. And once we get there, we're back to Judge Strauss' first question or first statement, we're back to the value of the roof. And that's really all that should have been in dispute for the last four years. I'm going to withhold the rest of my time for rebuttal, Your Honors. Very well.  Your Honors, may it please the Court, Hillary Hannon for Cincinnati Insurance Company. I apologize. I am wearing a mask. I'm recovering from an illness. I'm going to do my best. If you can't hear me, let me know. I usually can speak pretty clearly. I just want to clarify something that I heard during counsel's argument. I think a lot is focused on the triggering. Obviously, we talk about the triggering of that building code. And what Reimer attributes to what triggers that code is the roof repair, the necessity of repairing the roof and sort of that terminology. When, in fact, I believe when you read the code, it's the repair of saturated areas of a roof is what changes it from a piecemeal repair to a complete recover. And in this situation, we've argued this at the District Court. You can see this in our briefings. And we've brought it up as well that it is the way that the contractor provided the information about the repair in the application for the permit that changed it, that made for the denial. And we believe that that could have been phrased differently because in this situation at the appraisal, what was presented was a ton of information, an entire diagram of the entire roof service and clarifying which areas were saturated, which areas were not. I tend to agree with Judge Strauss in that the appraisal panel using the term mall roof repair is a catch-all term, right? They were asked to go out and do an appraisal, not of the wood siding, not of a windows. Sometimes we have different types of appraisals. But it was an appraisal looking at the roof area. And so in looking at the roof, this is what they said. They said it needed repairs on those flashing, on the parapet areas, and that is part of the roof. I think the difficulty in this matter has been that Cincinnati and Reimer sort of both think that the award is unambiguous, but somehow interpret that differently. I do believe that if Reimer thinks that the award is unambiguous, then it should stand, as we asked for it to be confirmed and as it was confirmed by the district court. That doesn't then allow you to then ask for the final award, the dollar amount of that appraisal award to be changed. And I think the belief that because the denial of that permit post facto then brings into question this other part allows them to take a crack at that dollar amount. It just doesn't jive with the situation. Would they have needed to vacate, in your view, the $23,000 and start? If they really wanted the $2.3 million or whatever it is, would they have needed to start over? I do think so, Your Honor. If I was in their shoes and it was my case to argue, I think it would have made sense to ask for the appraisal to be vacated or to ask for it to be reappraised. There are situations, there are some cases out there where they go back and do a new appraisal where maybe it was too ambiguous, there was too many errors in the calculations, that type of thing. That was never asked for in this case. And in fact, Your Honor, there's been some discussion about the depositions. I absolutely do not believe that Your Honors should consider those depositions during this portion of this matter. The case law out there is set in stone. That is, we're going into a province that's not the area that the court should be going into because otherwise, what is the purpose of appraisals? Obviously, we have them in place. We use them, especially insurance companies. It's a way to have some judicial economy. Our case here is an example where that has gone completely astray. If we were here on a denial of a vacature motion, would we be able to consider those depositions? They do seem to cut against you. If it was based on... It would have usually been based on either, like, a major error or fraud, and I think that is why Judge Shuster in the first place granted them because there were allegations of fraud. Wouldn't they have a pretty good error argument, a mistake argument, given what the depositions, what the appraisers said in the depositions? I don't agree, Your Honor. I guess I'm not sure which error or what you might be pointing to. I thought the depositions made it at least arguable that they contemplated roof repairs over and above just the flashing in their $23,000 award. Oh, those limited into the surface in order to tie into the parapet, right? Yes. Okay, and so I think our... I would just clarify, I guess, the difference that I see there is that, and this goes back to my point about the way the contractor worded their request for the permit, so if there is work that needs to be done on the parapet wall for that flashing, and there's different types out there, so we do metal flashing sometimes. It's a wood top piece on the parapet, but then it comes in, and if it's, like, a ballast roof or a fully adhered membrane roof, there usually would be some amount of tie-in. If that is tying into a fine-condition roof that does not have saturation, then there would be no issue. That would not implicate the need for a full roof or cover. If, in that 12-foot section where you need to make that tie-in, that area is dry, you can make that tie-in, that minimal repair, without having to do the recover. What they weren't able to do or what they didn't present to the city or the county at the time was what areas were saturated or what areas were not saturated because it was to their advantage to suggest that they had to do these tie-ins to a fully saturated and affected roof. Does that clarify at all? And is that a fact question? I just would ask, is that a fact question that was presented to the appraisers, too? Yes, Your Honor, and I do, I apologize if I couldn't go back. I think we hit on this in our brief, but one of the things that we argued at district court and we kind of keep going back to is that these are arguments and the implication of the building code is something that should have been, if it was known that it was going to be an issue as kind of the way that they are thinking of it or the way Reimer presents it, then it should have been even more vehemently presented at the time of appraisal. And I don't know if any of you have had the opportunity, but when you go out there, it's kind of like a little mini, sometimes we do it in a conference room and we present evidence with testimony, then we go out and look at the space. But it's an opportunity for the experts to kind of discuss, but also present stuff and present their argument. And if that was the situation, that contractor should have been present and should have said, hey, this area right here where you're saying we need the flashing repaired because of the tornado, that's going to have to tie into the saturated portion. And that saturated portion is from three feet to six and a half feet, and so we need to mark that down because when we go and present that to the city, they're going to note that and that's going to implicate the code. That wasn't done. And so then to come back on the back end and just say, oh, well, when our contractor presented this to the county, they told them that it was saturated and so now we have the implication of the code and we have to do a full recover, it's a way to kind of backdoor that in. Your Honors, I do just want to note that we did make an argument and I believe we briefed it. Part of our argument is that the Reimers' presentation of kind of wanting to re-litigate the second summary judgment portion after the case was remanded, we believe that's somewhat improper at this point in time. We do already have the final judgment from the court from 2024 wherein the appraisal award was confirmed and that is where we would like, Your Honors, to focus and decide the matter. And within kind of the, if Your Honors are considering that the position of the second summary judgment on remand, that within that is that the affidavit of Phil Simon, and we had previously brought the motion to strike, I don't want to belabor all of that. We provided briefing on that. If there's any questions, I can answer on that. But when it comes down to it, the way that Cincinnati views this matter is that we've done our best. We went through the appraisal process trying to be as efficient as possible. You know, there was some questions at the Eighth Circuit, or on the appeal, and so we come back to the court. Based on Judge Chastood's reading of the opinion, there was three basic issues that were up in the air. The matter was reopened for discovery and we did attempt to exchange some things. Nothing additional was presented by Reimer or offered as part of anything about, I would say as facts, specifically going to that, the code being implicated based on the permanent application, whether they had applied again, whether there was any other attempts. And then when we go forward from there, the court decides that maybe there is some ambiguity, I think out of an abundance of caution, decides to seek clarification. And the language that was presented in the appraisal clarification questions, Cincinnati basically agreed in whole part with the presentation so that it mimicked the language of the court as much as possible and it allowed for the appraisal panel members to answer those questions, essentially getting to the crux of the issue and present their answers to the court. I think at the district court at least, there was a lot of discussion about the dollar amount of the $23,000, that that perhaps is more than what a simple repair to those parapets and the flashing. And maybe that's just a down-the-wall tie-in, what it would cost to do. But as the case law is out there, what we know is that appraisal panels sometimes do make compromises, they sometimes ascribe a dollar amount that might be slightly higher or slightly lower than what may be asked by one party or the other, but that's normal. And I don't think that any sort of in-depth examination or ascribing beliefs needs to go into what that dollar amount meant. Is there an objective way to justify the $23,000 based on what they said had to be repaired? So the flashing and everything else, could you get to $23,000? Or does it seem like to you, it's just a complete compromise? Your Honor, it would be a high amount for the sections that they specifically detailed that would need to be repaired for the dollar at the time in 2020 for those repairs for the materials and the labor. It would be high. So, and I think, even though I would like, Your Honor, to not consider the depositions because I think it goes astray of the purpose of appraisals, but one of the things that was discussed was, sometimes you get to something that that's what he was comfortable agreeing with. So the appraisal member for Reimer is not super happy with them saying, well, the tornado really only damaged these parapet walls, these flashing, so we're going to only give for the repair of those specific items. That would maybe cost $11,000, $12,000, but let's add $10,000. It's much less than what they would, if they had to repair the whole thing, but that's not what we're seeing here. So we'll just, you know, split the baby a little bit and we're going to give them a little bit of a bone here. And so that's where I, you know, it's not precise, maybe not as neat as we would all love it to be, but that's also what's, that's the beauty of appraisals and how we get things done without having to go through the whole process, having judges, you know, serve us right every single little part of this. Your Honor, I, Your Honors, I will just finish up here and partially because I'm, my voice is obviously running out on me. I do believe that the district court did their best in this case and it followed the legal precedent. I think that his order affirming the appraisal award is sound and factually supported. I would request that the court affirm the appraisal panel, or affirm the lower court, and that, as I mentioned, not consider or not decide on the Reimer's secondary argument about the remand, the second summary judgment portion. Unless there are other questions, I'll leave my time. Thank you. Hearing none, very well. Thank you, Your Honors. The middle of that argument, it struck me because it was what was supposed to happen on the remand, and that was questions about the application of the building permit if there was issues. That's not what happened. When we were sent back to the district court, there were issues, and I made some notes of what was talked about in the first scheduling conference with the court, and Cincinnati had questions about the building permit. No questions were asked in discovery. The only discovery was those two affidavits. I mean, and politely, I would call them self-serving. I think that beyond that, I think we found out that they were just not correct. I think it would help, and I know we have a short period of time, but for the court to take a long look at sort of the whole timeline of this case and what happened and what happened at each stage of it. Let me ask you, why do you say the affidavits are self-serving? Well, because we found that they were written by an attorney for two separate individuals of a panel, of which that attorney doesn't represent, but after this appraisal, clearly has an interest in what their opinions will be. It changed fundamentally the plain language of the award. Again, they were identical between an appraiser and umpire, and later the umpire tells us that, yeah, no, I didn't believe any of what I put in there. I just signed it without even knowing what it was. So I would politely call that self-serving. Let's go back to the appraisal pencil. This came up in the other argument here. The contractor for Emery did present the case at the appraisal. All of this information we're talking about was presented to the appraisal panel. The fact that the roof was fully saturated was an argument that Cincinnati and three of its experts that it brought to the appraisal presented. Our contractor presented to the panel that a full roof replacement was required because of the damage and because of the saturation of the roof. After the award, the next day there's a request of, okay, $23,000 for roof repair, which, by the way, is 10 times what our side argued that flash armor cost. So that's quite a bit more than just a rounding error. But the next day after the award, we get a contemporaneous email saying, this is what the award means. And that information was circulated to the panel, and there was no objection to it until those affidavits after the remand. So I think the timeline, and what's difficult is at each stage of this case, different arguments have been raised or different reasons to avoid paying for this roof. At the appraisal, the argument was, the roof's wet, we shouldn't have to pay for it, it's a bad roof. Okay, district court accepted that and said, fine, there's no coverage for that, okay. We come to the appeal, and the court goes, you know what, this coverage actually does get triggered under these sets of circumstances. If this is true, we've got to pay for a full roof. All right, so we go back to the remand, and this award is not what we all think it is. Now all of a sudden it means something different. And the triggering event to open up that question is those affidavits, which again, I bring back sort of what I will call the path of least resistance for the court, or to upset the least amount of things, is for the court to go, those affidavits had no place in this case. They're gone. We go back to the original summary judgment. Nothing has been presented to contradict the building permit, what was required by it, and what was needed to be done by it. We have a plain award that says a mall roof repair in an amount of money that we have confirmed both in contemporaneous emails and later in the depositions. We have all of this information from the court to look at and go, this is simple. There was an appraisal that required roof repairs. Those roof repairs triggered a building permit being denied, and that denial of the building permit triggers the law and ordinance coverage and requires Cincinnati to pay for a full roof replacement. If there's nothing else, Your Honor, I thank you for your time. Thank you, counsel. The court appreciates both counsel's appearance and arguments. Case is submitted.